1
2
3
4
5
6
7
8                     UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   SMBAT VOSKANYAN,                      No.  2:24-cv-01543-SCR

12              Plaintiff,

13        v.                               MEMORANDUM OPINION AND ORDER

14   COMMISSIONER OF SOCIAL
     SECURITY,
15
                Defendant.
16

17

18        Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security

19   ("Commissioner"), denying his application for disability insurance benefits ("DIB") under Title II

20   and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C.

21   § 401-34; § 1381-1383f.  For the reasons that follow, the Court will GRANT Plaintiff's motion

22   for summary judgment and DENY the Commissioner's cross-motion for summary judgment.

23   The matter will be reversed and remanded to the Commissioner for further proceedings.

24                     **I.  PROCEDURAL BACKGROUND**

25        Plaintiff applied for DIB and SSI in 2021.  Administrative Record ("AR") 227-240.[1]  In

26   both applications, Plaintiff alleged a disability onset date of January 1, 2011.  AR 227, 229.  The

---

[1]  The AR is electronically filed at ECF No. 11-2.  Page references are to the number in the lower
right corner of the page, not the CM/ECF generated header.  References to briefs are to the page
number generated on the CM/ECF header.

1    application was disapproved initially, and on reconsideration.  AR 100-01, 138-39.  On

2    September 7, 2023, administrative law judge ("ALJ") Christopher Knowdell presided over a

3    hearing on Plaintiff's challenge to the disapprovals.  AR 37-55 (transcript).  Plaintiff participated

4    in the telephonic hearing, and had a representative.  AR 37.  Carly Coughlin, a vocational expert,

5    also testified.  AR 50-54.

6         On October 19, 2023, the ALJ found plaintiff "not disabled" under the Act.  AR 20-33

7    (decision).  On April 5, 2024, the Appeals Council denied Plaintiff's request for review, leaving

8    the ALJ's decision as the final decision of the Commissioner.  AR 1-3 (decision).

9         Plaintiff filed this action in the Eastern District of California on June 1, 2024.  ECF No. 1.

10   The parties' cross-motions for summary judgment, based upon the Administrative Record filed by

11   the Commissioner, have been fully briefed.  ECF Nos. 14 (Plaintiff's summary judgment motion),

12   16 (Commissioner's summary judgment motion), and 19 (Plaintiff's reply).

**II.  FACTUAL BACKGROUND**

14        Plaintiff was born in 1969, and was 51 years old when he filed his application.  AR 227.

15   Plaintiff testified at the September 2023 hearing before the ALJ that he had last worked "last

16   year."  AR 42.  He testified that he had worked painting houses from roughly 2009 to "about a

17   year ago" [2022].  AR 42.  He testified that the work was seasonal, and usually done between

18   March and August.  AR 43.  The work was generally three or four days a week, five hours per

19   day.  AR 43.  While doing that work, the heaviest amount he would lift was 70 pounds.  AR 43.

20   Plaintiff was asked about every year between the alleged onset date in 2011 thru 2018, and

21   whether if there had been enough painting work to do, he could have worked full-time.  AR 44-

22   45.  Plaintiff testified that from 2011 to 2017 he could have worked full-time painting houses.  *Id*.

23        Then, beginning in 2018, he testified he "could not work a lot" due to his diabetes and

24   sugar levels going up.  AR 45.  Plaintiff testified he would experience "shivering" from the sugar

25   levels and that his legs would not function.  AR 45.  He testified he could only stand for 10

26   minutes at a time and lift two to three kilograms [4.4 to 6.6 pounds].  AR 46.  When asked if there

27   was any other reason he could not work, he answered "No," but then added he has pain.  AR 46.

28   He testified of the need to lay down due to leg pain.  AR 46.  He was asked again if there were

1    any other problems that prevented him from working, and he said that he needs to do insulin

2    injections four times per day.  AR 47.

3        Later in the hearing, Plaintiff mentioned that when his sugar level goes up he is in

4    depression.  AR 49.  The ALJ asked when it started, and Plaintiff responded that when his

5    diabetes started is when depression started.  AR 49.  He testified his depression has prevented him

6    from working, but he did not remember when it first prevented him from working.  AR 49.  He

7    further testified he had tried medication for depression and was taking medication for depression

8    at the time of the hearing.  AR 49-50.

9                            **III.  LEGAL STANDARDS**

10        The Commissioner's decision that a claimant is not disabled will be upheld "if it is

11    supported by substantial evidence and if the Commissioner applied the correct legal standards."

12    *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1011 (9th Cir. 2003).  "'The findings of the

13    Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . ..'"  *Andrews*

14    *v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (quoting 42 U.S.C. § 405(g)).

15        Substantial evidence is "more than a mere scintilla," but "may be less than a

16    preponderance."  *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).  "It means such relevant

17    evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v.*

18    *Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks omitted).  "While inferences from

19    the record can constitute substantial evidence, only those 'reasonably drawn from the record' will

20    suffice."  *Widmark v. Barnhart*, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted).

21        Although this court cannot substitute its discretion for that of the Commissioner, the court

22    nonetheless must review the record as a whole, "weighing both the evidence that supports and the

23    evidence that detracts from the [Commissioner's] conclusion."  *Desrosiers v. Secretary of HHS*,

24    846 F.2d 573, 576 (9th Cir. 1988); *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985) ("The

25    court must consider both evidence that supports and evidence that detracts from the ALJ's

26    conclusion; it may not affirm simply by isolating a specific quantum of supporting evidence.").

27        "The ALJ is responsible for determining credibility, resolving conflicts in medical

28    testimony, and resolving ambiguities."  *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th

                                            3

1  Cir. 2001).  "Where the evidence is susceptible to more than one rational interpretation, one of

2  which supports the ALJ's decision, the ALJ's conclusion must be upheld."  *Thomas v. Barnhart*,

3  278 F.3d 947, 954 (9th Cir. 2002).  However, the court may review only the reasons stated by the

4  ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely."  *Orn*

5  *v. Astrue,* 495 F.3d 625, 630 (9th Cir. 2007); *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir.

6  2003) ("It was error for the district court to affirm the ALJ's credibility decision based on

7  evidence that the ALJ did not discuss").

8      The court will not reverse the Commissioner's decision if it is based on harmless error,

9  which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the

10 ultimate nondisability determination.'"  *Robbins v. Soc. Sec. Admin*., 466 F.3d 880, 885 (9th Cir.

11 2006) (quoting *Stout v. Commissioner*, 454 F.3d 1050, 1055 (9th Cir. 2006)); *see also Burch v.*

12 *Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

13                          **IV.  RELEVANT LAW**

14     Social Security benefits are available for eligible individuals who are "disabled." 42

15 U.S.C. § 1381a.  An individual is "disabled" if unable to "engage in any substantial gainful

16 activity by reason of any medically determinable physical or mental impairment which can be

17 expected to result in death or which has lasted or can be expected to last for a continuous period

18 of not less than twelve months." 42 U.S.C. §1382c(a)(3)(A); *see also Bowen v. Yuckert*, 482 U.S.

19 137, 140 (1987).

20     The Commissioner uses a five-step sequential evaluation process to determine whether an

21 applicant is disabled and entitled to benefits.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4);

22 *Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003) (setting forth the "five-step sequential evaluation

23 process to determine disability" under Title II and Title XVI.  The following summarizes the

24 sequential evaluation:

25         Step one: Is the claimant engaging in substantial gainful activity?  If
           so, the claimant is not disabled.  If not, proceed to step two.
26
   20 C.F.R. §§ 404.1520(a)(4)(i), (b); 416.920(a)(4)(i), (b).
27

28         Step two: Does the claimant have a "severe" impairment?  If so,
           proceed to step three.  If not, the claimant is not disabled.

                                    4

1    *Id*., §§ 404.1520(a)(4)(ii), (c); 416.920(a)(4)(ii), (c).

2
        Step three: Does the claimant's impairment or combination of
        impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404,
3       Subpt. P, App. 1?  If so, the claimant is disabled.  If not, proceed to
        step four.
4

5    *Id.*, §§ 404.1520(a)(4)(iii), (d); 416.920(a)(4)(iii), (d).

6       Step four: Does the claimant's residual functional capacity make her
        capable of performing her past work?  If so, the claimant is not
7       disabled.  If not, proceed to step five.

8    *Id.*, §§ 404.1520(a)(4)(iv), (e), (f); 416.920(a)(4)(iv), (e), (f).

9       Step five: Does the claimant have the residual functional capacity
        perform any other work?  If so, the claimant is not disabled.  If not,
10      the claimant is disabled.

11   *Id.*, §§ 404.1520(a)(4)(v), (g); 416.920(a)(4)(v), (g).

12       The claimant bears the burden of proof in the first four steps of the sequential evaluation

13   process.  20 C.F.R. §§ 404.1512(a), 416.912(a) ("In general, you have to prove to us that you are

14   blind or disabled"); *Bowen*, 482 U.S. at 146 n.5.  However, "[a]t the fifth step of the sequential

15   analysis, the burden shifts to the Commissioner to demonstrate that the claimant is not disabled

16   and can engage in work that exists in significant numbers in the national economy."  *Hill v.*

17   *Astrue,* 698 F.3d 1153, 1161 (9th Cir. 2012); *Bowen*, 482 U.S. at 146 n.5.

18                           **V.  THE ALJ's DECISION**

19       The ALJ made the following findings:

20       1. [Step 1] The claimant has not engaged in substantial gainful
         activity ("SGA") since January 1, 2011, the alleged onset date (AR
21       22).

22       2. [Step 2] The claimant has the following severe impairments:
         diabetes mellitus, diabetic peripheral neuropathy, hypertension,
23       major depressive disorder, anxiety disorder, and arthritis (AR 23).

24       3. [Step 3] The claimant does not have an impairment or combination
         of impairments that meets or medically equals the severity of one of
25       the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1
         (AR 23).
26

27       4.  [Preparation for Step 4] After careful consideration of the entire
         record, I find that the claimant has the residual functional capacity to
         perform light work as defined in 20 CFR 404.1567(a) and 416.967(b)
28       except no more than occasional climbing, balancing, stooping, and

                                    5

kneeling; no crouching or crawling; and is capable of simple repetitive tasks (AR 24-25).

5. [Step 4] The claimant has no past relevant work because his earnings from painting fall below SGA levels (AR 22 & 30).

6. [Step 5] The claimant was born in 1969 and was 41 years old, which is defined as a "younger individual" on the alleged onset date (20 CFR §§ 404.1563), but subsequently changed age category to closely approaching advanced age (AR 30).

7. [Step 5, continued] The claimant has a limited education (AR 30).

8. [Step 5, continued] Transferability of job skills is not at issue because claimant does not have past relevant work (AR 31).

9. [Step 5, continued] Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (AR 31).

10. The claimant has not been under a disability, as defined in the Social Security Act, from January 1, 2011, through the date of the ALJ's decision. (AR 31).

## VI. ANALYSIS

Plaintiff's opening brief fails to present clear points of alleged error. Instead, the first point in the argument section of Plaintiff's brief discusses an "inscrutable" alleged onset date[2] and "pejorative combination" with a non-SGA job. ECF No. 14 at 4. Plaintiff argues the "decision played gotcha unfairly" with Plaintiff's credibility. *Id.* at 6. The next argument sub-heading is: "The medical opinions: abundant technical error and rampant cherry-picking." ECF No. 14 at 10. Instead of presenting clear, concise issues for review, the brief makes reference to Humpty Dumpty, "word salad," and "mirabile dictu." ECF No. 14 at 11-13. Plaintiff's reply brief then states the Commissioner's brief is "making a silk purse out of a sow's ear." ECF No. 19 at 2. The reply brief accuses the Commissioner's attorneys of "inventing arguments," and states that both the ALJ and the Commissioner's attorneys "falsely put words" in Plaintiff's mouth. ECF No. 19 at 5. The reply brief informs the Court that "red lights should flash" while reading the

---

[2] Plaintiff describes the alleged onset date as a "peculiarity" and implies it is incorrect. ECF No.14 at 4. Plaintiff states it is "doubtful" it could be explained and was made by a non-attorney representative who withdrew. *Id.* However, Plaintiff did not move to amend the date before the agency.

6

1    ALJ's decision and that the ALJ's decision "gerrymandered" the medical opinions and engaged in

2    "circularity." ECF No. 19 at 7, 9. The reply brief concludes with a final footnote that references

3    dancing on graves. ECF No. 19 at 13. In sum, Plaintiff's briefing is high on rhetorical flourish

4    but lacks the clear presentation of issues for the Court to review. Generally, arguments "that are

5    not specifically and distinctly raised and argued" in an opening brief will not be considered by the

6    court. *Padgett v. Wright*, 587 F.3d 983, 985 n. 2 (9th Cir. 2009).

7            Despite the lack of clarity in the Plaintiff's briefing, the Commissioner has attempted to

8    distill the issues (ECF No. 16 at 2), and the Court will review the following three issues:

9            (1) Whether the ALJ provided adequate reasons for discounting Plaintiff's subjective

10           symptom testimony;

11           (2) Whether the ALJ improperly evaluated the medical opinion evidence; and

12           (3)  Whether the ALJ had a duty to develop the record further.[3]

13           **1.  Plaintiff's Subjective Symptom Testimony**

14           Plaintiff contends the ALJ's decision "played gotcha, unfairly" with Plaintiff's credibility.

15   ECF No. 14 at 6. The particulars of Plaintiff's argument are somewhat unclear, but Plaintiff

16   generally appears to allege that Plaintiff testified as to fatigue, weakness, and pain, and that the

17   ALJ did not give adequate reasons for discounting that testimony. Defendant argues that the ALJ

18   did give clear and convincing reasons supported by substantial evidence which included: 1)

19   inconsistency with the objective medical evidence; 2) impairments responded well to prescribed

20   treatment and lifestyle changes; and 3) consideration of Plaintiff's activities of daily living and

21   work history. ECF No. 16 at 4.

22           The ALJ discounted Plaintiff's testimony regarding the intensity, persistence, and limiting

23   effects of his impairments. AR 28. Evaluating a claimant's subjective testimony is a two-step

24   process. "First, the ALJ must determine whether the claimant has presented objective medical

25   evidence of an underlying impairment which could reasonably be expected to produce the pain or

26   other symptoms alleged. In this analysis, the claimant is not required to show that her impairment

27

28   [3]  While the Commissioner's brief does not list this as a separate issue, it was raised in Plaintiff's
     brief (ECF No. 14 at 14-15) and responded to in the Commissioner's brief (ECF No. 16 at 15-16).

1   could reasonably be expected to cause the severity of the symptom she has alleged; she need only

2   show that it could reasonably have caused some degree of the symptom." *Garrison v. Colvin*,

3   759 F.3d 995, 1014 (9th Cir. 2014) (internal citations omitted).  Objective medical evidence of

4   the pain or fatigue itself is not required.  *Id.*  Second, if the claimant succeeds in providing

5   objective evidence of the impairment and "there is no evidence of malingering," the ALJ can only

6   reject the claimant's testimony about the severity of such symptoms if there are "'specific, clear

7   and convincing reasons for doing so.'"  *Id.* at 1014-15 (internal citations omitted); *see also Smartt*

8   *v. Kijakazi*, 53 F.4th 489, 494 (9th Cir. 2022) (applying this standard even "[w]hen objective

9   medical evidence is inconsistent with a claimant's subjective testimony").

10      Second, if the ALJ does not find evidence of malingering, the ALJ may only reject the

11   claimant's testimony by offering "specific, clear and convincing reasons for doing

12   so." *Id.* (internal citations omitted).  While an ALJ's credibility finding must be properly

13   supported and sufficiently specific "an ALJ is not required to believe every allegation of disabling

14   pain, or else disability benefits would be available for the asking, a result plainly contrary to the

15   Social Security Act." *Smartt*, 53 F.4th at 499 (internal citation and quotation omitted).  In

16   weighing a claimant's credibility, an ALJ may consider, among other things, inconsistencies

17   either in the claimant's testimony or between her testimony and her conduct, claimant's daily

18   activities, her work record, and testimony from physicians and third parties concerning the nature,

19   severity, and effect of the symptoms of which claimant complains.  *Thomas v. Barnhart*, 278 F.3d

20   947, 958-59 (9th Cir. 2002).

21      The ALJ observed that there were inconsistencies in Plaintiff's testimony.  AR 28.

22   Plaintiff testified that beginning in 2018, he "could not work a lot" due to his diabetes and sugar

23   levels going up.  AR 45.  He testified he could only stand for ten minutes at a time and lift two to

24   three kilograms [4.4 to 6.6 pounds].  AR 46.  When asked if there was any other reason he could

25   not work, he answered "No," but then added he has pain.  AR 46.  The ALJ specifically addressed

26   these subjective symptom allegations and stated: "claimant's work activities are inconsistent with

27   the significant complaints he alleges including fatigue, weakness, pain."  AR 28.

28

8

The ALJ discussed several inconsistencies with Plaintiff's statements about the limiting effects of his symptoms.  First, the ALJ noted "the record reflects he worked as a painter from 2011 until 11/2021, and that according to his testimony, he lifted up to 70 pounds and was on his feet performing physically demanding work activities such as sanding, painting and climbing ladders."  AR 28.  It was appropriate for the ALJ to consider Plaintiff's work as a painter, even if that work did not constitute SGA at other steps of the analysis.  See *Nadon v. Bisignano*, 145 F.4th 1133, 1136 (9th Cir. 2025) ("An ALJ is permitted to consider any work done by a claimant when evaluating a disability claim, regardless of whether the work constitutes substantial gainful activity."); 20 C.F.R. § 404.1571 ("Even if the work you have done was not substantial gainful activity, it may show that you are able to do more work than you actually did.").

The ALJ also found that Plaintiff's "allegations of frequent hypoglycemic episodes are not consistent with the medical evidence of record."  AR 28.[4]  An ALJ must consider the objective medical evidence along with other evidence when evaluating the reliability of symptom testimony.  20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4); *see also Smartt*, 53 F.4th at 498 ("When objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony.") (emphasis in original).  The ALJ noted there had only been a few significant episodes of hypoglycemia over the years and at times there had been improvement, such as the A1C declining from 13 to 9.  AR 28 citing AR 569.  The ALJ's conclusion that his A1C was somewhat improved is supported by the record.  Labs taken in February 2023 showed it had declined to 10, from 13 in July 2022.  AR 580.  The office note states the A1C is "improved" but "still high," but also that Plaintiff "does not like the feeling when sugars are under 200 so deliberately keeps them up."  AR 580.  Labs in June 2023 showed a further decline to 9.2.  AR 635.  The ALJ notes this is still an "elevated" reading, but is improved.  AR 27-28.  The ALJ could appropriately consider that Plaintiff's condition was improving, but

---

[4]  The reference to **hypo**glycemic rather than **hyper**glycemic may have been a typographical error.  The record reflects Plaintiff had recurrent issues with high blood sugars, consistent with hyperglycea.  Hypoglycemia refers to low blood sugar.  Clear typographical errors may constitute harmless error.  See *Lewis v. Berryhill*, 722 F.App'x 660, 661 (9th Cir. 2018) ("The ALJ's typographical error, omitting the word 'no' from 'requiring [no] public contact,' is harmless.")

1    the ALJ's analysis *does not* demonstrate that allegations concerning **hyper**glycemia were

2    *inconsistent* with the medical evidence.

3          The ALJ also considered inconsistent statements in the record concerning Plaintiff's work

4    history and education, and referred to the report of consulting psychological examiner, Dr.

5    Jakubowski.  AR 28.  An ALJ when evaluating the claimant's testimony may consider prior

6    inconsistent statements and testimony "that appears less than candid."  *Tommasetti v. Astrue*, 533

7    F.3d 1035, 1039 (9th Cir. 2008).  Plaintiff refers to this record evidence as the "obviously

8    mistaken hearsay from the pen of the CE psychologist."  ECF No. 14 at 9.  Notably, Plaintiff's

9    primary language is Armenian and Dr. Jakubowski is fluent in Armenian.  The evaluation was

10   conducted in Armenian.  AR 485.  Plaintiff told Dr. Jakubowski that he had last been employed in

11   2021 as a custodian.  AR 28, citing AR 487.  At the hearing, Plaintiff reported working as a

12   painter.  AR 42.  Plaintiff also reported to Dr. Jakubowski that he went to school through 10th

13   grade, was not in special education classes, and obtained his diploma.  AR 486.  The ALJ found

14   this inconsistent with reporting a 10th grade education on his disability report where the

15   instructions state you should indicate 12 "if you have education equivalent to high school from

16   another country."  AR 28 citing AR 273.  This technical and minor misstatement about education

17   is *not* a sufficient reason to discount Plaintiff's testimony.

18         The ALJ also considered Plaintiff's activities of daily living, including his ability to take

19   care of himself, prepare meals, perform light chores, and drive.  AR 28.  The ALJ found the

20   activities "inconsistent with disability because they indicate the capacity to perform focused and

21   sustained activities similar to the capacity required to perform many work activities."  AR 28.  An

22   ALJ may consider "whether the claimant engages in daily activities inconsistent with the alleged

23   symptoms."  *Smartt*, 53 F.4th at 499 (internal citation and quotation omitted).  The ALJ

24   reasonably concluded that these activities illustrated Plaintiff was more capable than he claimed.

25   *See Ahearn v. Saul*, 988 F.3d 1111, 1117 (9th Cir. 2021) (finding that claimant's daily activities

26   which included playing video games, watching TV, using library computer, using public

27   transport, shopping, preparing meals, and socializing supported the ALJ's decision to discount

28   subjective claims).

1       In total, the ALJ reasons for discounting Plaintiff's subjective symptom allegations as

2   sufficiently specific, clear, and convincing.  Although as set forth above, the Court does not

3   concur with all of them, such is not required.  *See Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d

4   1155, 1162-1163 (9th Cir. 2008) (finding harmless error despite concluding that two of the ALJ's

5   reasons for the adverse credibility finding were invalid).  However, the Court finds error

6   warranting remand on other grounds described below.

7           **2.   The ALJ's Evaluation of the Medical Opinions**

8       Plaintiff contends the ALJ's consideration of the medical opinions reflected "abundant

9   technical error and rampant cherry-picking."  ECF No. 14 at 10.  A conclusory allegation of

10  cherry picking is not useful to the Court's review.  Social security records are voluminous and

11  often contain evidence that both supports and undermines the claimant's arguments.  *See White v.*

12  *Comm'r of Soc. Sec.*, 572 F.3d 272, 284-85 (6th Cir. 2009) (acknowledging a cherry picking

13  argument often "cuts both ways" and finding "little indication that the ALJ improperly cherry

14  picked evidence; the same process can be described more neutrally as weighing the evidence").

15  Plaintiff states that "the record contains nothing but" a consultative examiner and two non-

16  examining physicians all agreeing that Plaintiff's proper exertional level is light.  ECF No. 14 at

17  11.  Plaintiff then mentions the opinion of Dr. Amon and states the ALJ's consideration was "a

18  kind of picking-and-choosing or perhaps a Humpty-Dumptyish choosing of word-meaning."  *Id*.

19      Plaintiff takes issue with the ALJ's consideration of the opinions of Dr. Amon and Dr.

20  Ali, whose decisions support a conclusion that Plaintiff could perform work at a light exertional

21  level.  ECF No. 14 at 11.  Plaintiff also contends that Dr. Jakubowski's psychological report

22  "describes disability" and that its erroneous rejection requires reversal.  ECF No. 14 at 13.

23  Notably, this is the same Dr. Jakubowski whose report Plaintiff characterizes as containing

24  "obviously mistaken hearsay from the pen of the CE psychologist."  ECF No. 14 at 9.

25  The factors for evaluating the persuasiveness of a physician opinion include supportability,

26  consistency, relationship with the claimant (including length of the treatment, frequency of

27  examinations, purpose of the treatment, extent of the treatment, and the existence of an

28  examination), specialization, and "other factors that tend to support or contradict

11

a medical opinion or prior administrative medical finding" (including, but not limited to,

"evidence showing a medical source has familiarity with the other evidence in the claim or an

understanding of our disability program's policies and evidentiary requirements"). 20 C.F.R. §§

404.1520c(c)(1)-(5).  Supportability and consistency are the most important factors, and therefore

the ALJ is required to explain how both factors were considered.  20 C.F.R. §§ 404.1520c(b)(2).

In rejecting any medical opinion as unsupported or inconsistent, an ALJ must provide an

explanation supported by substantial evidence.  *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir.

2022).  In sum, the ALJ "must 'articulate ... how persuasive' [he or she] finds 'all of

the medical opinions' from each doctor or other source ... and 'explain how [he or she] considered

the supportability and consistency factors' in reaching these findings."  *Id.*  (citing 20 C.F.R. §§

404.1520c(b), 404.1520(b)(2)).

A.  <u>M. Jakubowski, Psy.D.</u>

Dr. Jakubowski conducted a psychological consultative exam on March 28, 2022.  AR

485-491.  During the evaluation, Plaintiff presented in a "friendly manner", with normal facial

expressions, and it was easy to build rapport.  AR 485.  Plaintiff reported that his medical

diagnosis of diabetes has caused anxiety and stress.  AR 486.  Plaintiff reported that he began

experiencing depression one year ago. AR 486.  Plaintiff denied experiencing any difficulties

with colleagues or customers during his past employment.  AR 487.  During the mental status

examination ("MSE"), Plaintiff's thought processes were "clear and rational" and his "reported

mood was dysphoric, and it was congruent with his affect."  AR 487.  His concentration,

judgment, and memory were all rated as "diminished".  AR 488.

While discussing symptoms of depression, Plaintiff reported that his daughter had died

during the last year.  AR 489.  Dr. Jakubowski's prognosis was that Plaintiff's "current mental

health condition may not abate on its own within a one-year period."  AR 489.  Further, Plaintiff

"may benefit from starting therapy and psychiatric medication to manage current mental health

symptoms."  AR 489.  Dr. Jakubowski assessed Plaintiff as being able to understand, remember,

and perform simple written and oral instructions.  AR 489.  Dr. Jakubowski also assessed several

moderate and marked limitations, including that claimant would be "markedly limited" in

1  maintaining regular attendance in the workplace due to his major depressive disorder.  AR 489.

2  Dr. Jakubowski found that Plaintiff's ability to perform work activities on a consistent basis was

3  moderately to markedly limited due to deficits in attention, concentration, and memory, and that a

4  supervisor would likely need to prompt him to stay on task during the day.  AR 490.  He further

5  found Plaintiff "markedly limited" in his ability to deal with workplace stresses due to a "lack of

6  coping skills to stressful environments associated with major depressive disorder."  AR 490.

7      The ALJ found Dr. Jakubowski's report was "unpersuasive to the extent the CE found

8  moderate-marked mental limitations."  AR 29.  The ALJ discussed Dr. Jakubowski's findings in

9  some detail, and then concluded it was an "essentially negative MSE."  AR 30.  Later in the

10  analysis, the ALJ repeated this assertion "generally negative MSE, and generally unremarkable

11  findings."  AR 30.  This conclusion is not supported by the MSE findings.  Plaintiff's mood was

12  described as dysphoric[5] with congruent affect.  AR 487.  Plaintiff was observed to have "marked

13  difficulty with complex tasks" and his memory was diminished.  AR 488.  Plaintiff was unable to

14  recite any of 5 digits either forward or backward, and could recall only one of three words after a

15  brief delay.  AR 488.  Further, Plaintiff's concentration, insight, and judgment were all

16  diminished.  AR 488.  This is not an essentially normal exam lacking in unremarkable findings, as

17  characterized by the ALJ.

18      The ALJ also misread a portion of the report.  In discussing treatment history, Jakubowski

19  wrote that Plaintiff reported he was "currently prescribed psychotropic medication, Gabapentin

20  300MG and Fluoxetine 20MG" and that he had last taken the medication the prior day.  AR 486.

21  Dr. Jakubowski wrote: "Based on the information provided it does appear that the claimant is

22  medication compliant."  AR 486.  The ALJ misread this portion of the opinion and wrote: "[T]he

23  CE opined that based on information provided, the claimant did *not* appear to be medication

24  compliant."  AR 30 (emphasis in original).  The ALJ appears to have relied on this mistaken

25  assessment of medication non-compliance in concluding that Dr. Jakubowski's assessment of

26

27  _____
   [5]  Dysphoria means, "A mood of general dissatisfaction, restlessness, depression, and anxiety; a
   feeling of unpleasantness or discomfort."  *Stedmans Medical Dictionary*, available on Westlaw at
28  Stedmans 273670.

1    some moderate and marked limitations was unsupported.  The Court finds that the ALJ's

2    assessment of Dr. Jakubowski's opinion is not supported by substantial evidence.  Additionally,

3    as discussed *infra*, Dr. Jakubowski's report presented an ambiguity in the medical record which

4    triggered the ALJ's duty to further develop the record.

5          B.  S. Amon, M.D. and Shahid Ali, M.D.

6          Having found error in the ALJ's consideration of Dr. Jakubowski's opinion, the Court will

7    discuss the opinions of Dr. Amon and Dr. Ali only in brief.  Dr. Amon is a state agency medical

8    consultant who did an RFC assessment in April 2022, and assessed that Plaintiff could lift 25

9    pounds and stand and/or walk for 6 hours in an 8-hour day, and sit for 6 hours in an 8-hour day.

10   AR 68.  The ALJ found Dr. Amon's opinion to be partially persuasive.  AR 28-29.

11         Dr. Ali was a consultative examiner, and his findings were largely consistent with those of

12   Dr. Amon.  Dr. Ali assessed that Plaintiff could stand or walk for 6 hours with no limitation on

13   sitting.  AR 481.  He also found that Plaintiff could lift up to 20 pounds occasionally and 10

14   pounds frequently.  AR 481.  Dr. Ali examined Plaintiff in February 2022.  AR 482.  Plaintiff's

15   chief complaint was diabetes and he reported pain in his foot and "pins and burning sensation".

16   AR 482.  Dr. Ali reports that Plaintiff was able to walk into the exam room without difficulty, sit

17   comfortably, and get on and off the exam table without difficulty.  AR 483.  The note further

18   states: "Claimant is ambulating fairly well in my clinic without any difficulty or discomfort."  AR

19   483.  There was no assistive device and Plaintiff was able to heel/toe walk.  AR 483.  The exam

20   also showed that Plaintiff had "reduced sensation to vibration in both lower extremities."  AR

21   484.  The ALJ discussed Dr. Ali's findings and found the opinion to be persuasive and supported

22   by Dr. Ali's examination findings.  AR 29.

23         The Court finds that Plaintiff has failed to demonstrate error, let alone harmful error, in

24   the ALJ's consideration of the opinions of Dr. Amon or Dr. Ali.  *See Buck v. Berryhill*, 869 F.3d

25   1040, 1048 (9th Cir. 2017) ("The Court may not reverse an ALJ's decision on account of a

26   harmless error.").

27         **3.  ALJ's Duty to Develop the Record**

28   Plaintiff argues that the ALJ did not carry out his duty to develop the record when he

1    learned from Dr. Jakubowski's report that Plaintiff had a history of mental health treatment and

2    was taking medication.  ECF No. 14 at 15.  The Commissioner argues that Plaintiff fails to

3    support this argument.  ECF No. 16 at 15-16.  The Commissioner states that although there was

4    mention of a "history of treatment with counseling and psychotropic medication, he has not

5    shown that any outstanding evidence exists."  *Id*. at 16.

6         In social security cases, the ALJ "has an independent duty to fully and fairly develop the

7    record to assure that the claimant's interests are considered."  *Tonapetyan v. Halter*, 242 F.3d

8    1144, 1150 (9th Cir. 2001).  This duty exists in cases where the claimant is represented, and when

9    the claimant is unrepresented "the ALJ must be especially diligent in exploring for all the relevant

10   facts."  *Id.*  In *Tonapetyan*, as in this case, the claimant "was represented, but by a lay person

11   rather than an attorney."  *Id*.[6]  "The ALJ's duty to develop the record fully is also heightened

12   where the claimant may be mentally ill and thus unable to protect her own interests."  *Id*., citing

13   *Higbee v. Sullivan*, 975 F.2d 558, 562 (9th Cir.1992).  "Ambiguous evidence, or the ALJ's own

14   finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the

15   ALJ's duty to conduct an appropriate inquiry."  *Id.* (internal quotation and citation omitted).

16        Here, there is ambiguity in the record.  Plaintiff testified about his depression and stated

17   he was taking medication for depression.  AR 49-50.  Plaintiff told Dr. Jakubowski that he had

18   "received treatment" for his depression, and "reported having attending [sic] counseling and

19   reported having been prescribed psychiatric medications."  AR 486.  Plaintiff stated he was

20   "currently prescribed psychotropic medication, Gabapentin 300MG and Fluoxetine 20MG" and

21   that he had last taken the medication the prior day.  AR 486.  Dr. Jakubowski wrote: "Based on

22   the information provided it does appear that the claimant is medication compliant."  AR 486.  The

23   ALJ misread this portion of the opinion and wrote: "[T]he CE opined that based on information

24   provided, the claimant did *not* appear to be medication compliant."  AR 30 (emphasis in original).

25        In addition to the ALJ's error, the ambiguity was further exacerbated by the somewhat

26

27   _____

     [6]  Plaintiff was represented by Svetlana Kumansky and the first page of the transcript lists her as
28   "attorney for claimant," but the appointment of representative paperwork lists her as a non-
     attorney (AR 155), as does the counseled brief in this Court.  ECF No. 14 at 4.

inconsistent statements of Dr. Jakubowski. He wrote: "It is clear that [Plaintiff] has been treated for depression and anxiety disorders." AR 489. However, Jakubowski also wrote: "The claimant may benefit *from starting* therapy and psychiatric medication to address and manage current mental health symptoms." AR 489 (emphasis added). This statement is confusing given that the same report had earlier recounted that Plaintiff had attended counseling and was currently on medication. The ALJ did not develop the record to address this ambiguity, and instead stated, "the medical treatment record does not suggest any significant mental impairment issues." AR 30.

There are no medical records in the record substantiating that Plaintiff attended counseling for mental health, nor does there appear to be evidence that he was prescribed Fluoxetine, which is sold under the brand name Prozac. There is evidence that he was prescribed Gabapentin, although this appears to have been for his diabetic neuropathy. *See for example* AR 569, 579, 581, 585, 587, 594. Depression is scarcely mentioned in the medical record. Plaintiff was at a doctor's appointment in 2017 for his diabetes and depression screening results were "good." AR 510. There were also good depression screening results in 2014, 2015, and 2016. AR 514-19. The ALJ noted these good results. AR 26. However, these ancillary screening results were in the 2014 to 2017 range, years before Plaintiff told Jakubowski he became depressed (and before his daughter died).

It is ultimately the Plaintiff's burden to establish disability. *See Mayes v. Massanari*, 267 F.3d 453, 459 (9th Cir. 2001) citing 42 U.S.C. § 423(d)(5) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require."). Plaintiff has an obligation to bring forth evidence to support his claim. *See* 20 C.F.R. § 404.1512(a) ("In general, you have to prove to us that you are blind or disabled. You must inform us or submit all evidence known to you that relates to whether or not you are blind or disabled."). As observed by the Ninth Circuit, application of this burden of proof in social security cases is sometimes not straightforward. See *Tackett v. Apfel*, 180 F.3d 1094, 1098 n. 3 (9th Cir. 1999), citing *Donato v. Secretary of Dept. of Health & Human Servs. of the United States*, 721 F.2d 414, 418 (2d Cir.1983) (stating that

1   application of the burden of proof "is particularly elusive in cases involving social security

2   benefits, in part because the proceedings are not designed to be adversarial"). "[T]he ALJ's

3   affirmative duty to assist a claimant to develop the record further complicates the allocation of

4   burdens." *Tackett*, 180 F.3d at 1098 n.3.

5       Here, the record does not contain mental health treatment records. However, Plaintiff

6   reports being on prescribed medication for depression and attending counseling. His depression

7   is found by the ALJ to be a severe impairment, and he is diagnosed by consultative examiner Dr.

8   Jakubowski as having "major depressive disorder severe." AR 488. The ambiguity in the record

9   triggers the ALJ's duty to further develop the record.

10      The Ninth Circuit has recognized that the duty to develop the record is "especially

11  important" in cases of mental impairments, because a mentally ill person may not be capable of

12  adequately protecting himself by furnishing necessary evidence concerning the onset date.

13  *DeLorme v. Sullivan*, 924 F.2d 841, 850 (9th Cir. 1991). Here, Plaintiff is Armenian and was

14  assisted by an interpreter at the hearing, and represented by a non-attorney. AR 155. This

15  heightens the importance of the ALJ adequately developing the record. The Court finds that

16  remand is appropriate for further development concerning Plaintiff's depression and any

17  treatment he has received.

18                          **VII.  CONCLUSION**

19      A plaintiff has the burden to prove disability. *See Parra v. Astrue*, 481 F.3d 742, 746 (9th

20  Cir. 2007) ("The claimant bears the burden of proving steps one through four, consistent with the

21  general rule that at all times, the burden is on the claimant to establish entitlement to disability

22  insurance benefits.") (cleaned up). This includes meeting the twelve-month duration requirement.

23  See 42 U.S.C. § 423(d)(1)(A). Plaintiff alleged disability beginning in 2011. However, Plaintiff

24  testified that he was capable of working full-time from 2011 to 2017. Plaintiff also informed Dr.

25  Jakubowski that the development of depression was relatively new, beginning about a year before

26  his 2022 exam. On remand, Plaintiff should consider amending the alleged onset date. The ALJ

27  on remand must further develop the record as set forth herein.

28  ////

Accordingly, **IT IS HEREBY ORDERED:**

1. Plaintiff's motion for summary judgment (ECF No. 14) is GRANTED.

2. The Commissioner's cross-motion for summary judgment (ECF No. 16) is DENIED.

3. This matter is REMANDED to the Commissioner for further development of the record with regard to Plaintiff's mental impairments, and for further appropriate proceedings in light of those impairments and consistent with this Order. *See Tonapetyan*, 242 F.3d at 1151.

4. The Clerk shall enter Judgment for Plaintiff and close this case.

SO ORDERED.

DATED:  September 29, 2025.

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE

18